Filed 10/17/23  Vicente v. City and County of San Francisco CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JORGE VICENTE<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF<br>SAN FRANCISCO,<br><br>        Defendant and Respondent. | A166480<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-19-576623) |

Jorge Vicente appeals a summary judgment in favor of his employer, the City and County of San Francisco (the City), entered after the trial court found no triable factual disputes material to Vicente's causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for disability discrimination, failure to accommodate, failure to engage in an interactive process, and retaliation. The court held that Vicente's admission that he was "completely unable to perform his work duties with or without accommodation" throughout the time covered by his suit foreclosed his claims for discrimination and failure to accommodate, that his failure to allege retaliation in his complaint to the Department of Fair Employment and Housing (DFEH) (since renamed the Department of Civil Rights) barred his

retaliation claim for failure to exhaust administrative remedies (*id.*, § 12960), and that he failed to identify facts supporting relief on his interactive process claim. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

The City's motion set forth the following undisputed material facts.[1]

As of 2013, Vicente worked for the City's Public Utilities Commission (PUC). The PUC told him in November 2013 that he was under investigation for alleged misconduct. Vicente contended that he began to experience severe physical and psychological symptoms arising from the investigation. In January 2014, the symptoms became so severe that he could no longer work and took short-term disability leave.

The City terminated Vicente's employment in April 2014; he filed a grievance challenging the termination; and an arbitration ensued. The arbitrator issued an award on July 8, 2016 (the 2016 Award). He ruled that some discipline was appropriate but the City had not adduced evidence justifying termination. The 2016 Award reduced the penalty to a written warning and awarded backpay. The Arbitrator retained jurisdiction for further proceedings.

After the Arbitrator issued the 2016 Award, the City made the following efforts to coordinate Vicente's return to work.

On July 12, 2016, Deputy City Attorney Sallie Gibson emailed Vicente's attorney to ask that Vicente contact PUC employee Rachel Gardunio about coordinating his return to work.

On July 19, 2016, Gardunio called Vicente to coordinate his return and tell him that he could start work at any time. During the call, Vicente did not

---

[1] Vicente contends that over half the facts are disputed. We recite here the stated material facts and explain in part C of the Discussion, *post*, the nature of the asserted disputes and why they are invalid or immaterial.

2

disclose his symptoms or diagnoses or state that he had a disability. After Gardunio told him that she wanted to put him back to work right away, he undisputedly said that he was not ready to return to work and would need to check with his therapist, and he claims that he stated he was "going to need a . . . physical and psychological evaluation." The City acknowledges a factual dispute as to whether Vicente requested that the City arrange a physical and psychological evaluation before he returned to work. However, it is undisputed that the City did not agree to provide medical examinations for Vicente during this phone call.[2] Vicente contends there is a factual dispute as to whether the City had reason to know, as of July 19, 2016, that Vicente had some disability, but there is no genuine dispute that the City did not then know that he had a disability that made him completely unable to return to work.

On July 22, 2016, Deputy City Attorney Gibson wrote Vicente's lawyer that Vicente could call Gardunio "at any time about coordinating his return to work" and that there was "no reason why his return to work should be delayed" while counsel resolved pending disputes over back pay.

On September 21, 2016, Gibson wrote to Vicente's counsel that the PUC was "ready to put Mr. Vicente back to work immediately."

On January 9, 2017, Vicente's counsel sent the City a copy of a letter by his psychiatrist, Dr. Michael Auza, certifying that work-related stress and resultant "emotional, psychological and psychiatric trauma" had disabled Vicente from working as of January 2014 and that he was "unable to work."[3]

---

[2] The City did not, in general, require that an employee in Vicente's position undergo a City provided medical examination to return to work.

[3] Although Dr Auza's letter was dated September 12, 2016, the City did not receive it until January 9, 2017.

On January 27, 2017, Gardunio sent Vicente and his counsel a letter stating that the PUC had set a return to work date of February 7. After counsel replied that Vicente would be busy then preparing for the next arbitration hearing, set for February 9, Gardunio sent Vicente a letter on February 1 setting a return date of February 13. The February 1 letter provided reasonable accommodation paperwork for Vicente.

On February 2, 2017, Vicente's counsel sent Gardunio a letter stating, "Vicente is unable to return to work on February 13, 2017 with reasonable accommodations." Dr. Auza prepared a letter dated February 8 reiterating that Vicente remained unable to resume work due to symptoms related to psychiatric conditions.

On February 9, 2017, Vicente provided the City with a request for accommodation form. On February 10, 2017, the PUC sent Vicente a letter stating that it had granted him an interim leave.[4] On February 13, 2017, it reinstated Vicente to a status of leave of absence.

In sum, there is no valid dispute that, between July 19, 2016, and February 13, 2017, neither Vicente nor his counsel contacted the City to coordinate his return to work.[5] On June 15, 2017, the Arbitrator issued a

---

[4] There is a dispute over whether the leave was provided *as an accommodation*.

[5] In his response to the City's separate statement, Vicente purported to dispute the assertion that he made no such contact. He referred to two letters his lawyer sent to the City in the summer of 2016, but the record contains no evidence that those letters concerned his return to work. Vicente's assertion thus fails to support the existence of a factual dispute on this point. (See fn. 16, *post*.)

4

further award addressing remedial issues (the 2017 Award).[6] The City reimbursed Vicente as directed by the 2016 and 2017 Awards.

Vicente returned to work in September 2017.

In May 2018, Vicente filed a complaint with the DFEH alleging denial of accommodation and failure to interact, but not retaliation.

Vicente also pursued worker's compensation for injuries allegedly due to the investigation and termination. In August 2019, he and the City entered a settlement resolving his worker's compensation claims.

In June 2019, Vicente filed the complaint initiating this action. The operative First Amended Complaint asserts causes of action for disability discrimination, failure to engage in a good faith interactive process, failure to accommodate a disability, and retaliation.

In December 2021, the City moved for summary judgment. It sought judgment as a matter of law on many alternative grounds: that Vicente did not administratively exhaust his claims by timely filing a complaint with the DFEH; that the arbitration award and worker's compensation settlement estopped him to assert his claims and compensated him fully for any harm; and that his claims failed on the merits on many grounds. The City's separate statement concluded by reiterating that Vicente "was completely unable to

---

[6] The arbitrator found that, after receiving the 2016 Award, the PUC had offered to reinstate Vicente; that it did not learn until January 2017 that Dr. Auza had, in September 2016, certified his inability to work; and that the City reinstated him to a status of medical leave of absence in February 2017. The arbitrator held that Vicente was not entitled to lost wages, as he had been unable to work, including when the 2016 Award issued; that he would have to pursue via worker's compensation his claim that the City caused his inability to work; and that, because the City could have reinstated him sooner to a medical leave of absence, it must reimburse health benefit premiums he had paid, increase his pension service credit, and restore the leave balances he would have accrued if on leave.

5

perform his work duties with or without accommodation between April of 2014 and September 10, 2017." Vicente labeled this fact, "Not Disputed."

The court heard the motion for summary judgment in August 2022. Vicente's opposition made one argument on the merits, about the interactive process claim, and issued a blanket assertion that "many issues of fact are disputed." His response to the separate statement purported to dispute 24 of 44 material facts. Vicente's opposition papers did not address the administrative exhaustion argument or the merits of the disability discrimination, failure to accommodate, and retaliation claims.

At the hearing, Vicente's counsel addressed only the interactive process and discrimination claims and the City's issue preclusion argument. He expressly rejected the City's position that the leave of absence it provided starting in February 2017 constituted an accommodation.

The court granted the motion in full. Its order held that Vicente did not identify a genuine dispute as to any material fact, as his responses to the separate statement were "incoherent and nonresponsive." It held that the discrimination and failure to accommodate claims failed because he had been unable to work in the period at issue, the retaliation claim failed because he had not raised it in his DFEH complaint or offered evidence making a prima facie case, and the interactive process claim failed because his only argument was that the City " 'refused to communicate with [his] counsel,' " yet the record was replete with such communication.

After entry of judgment, Vicente timely appealed.

## DISCUSSION

On appeal from a summary judgment, we review the ruling de novo. (*Marshall v. County of San Diego* (2015) 238 Cal.App.4th 1095, 1107.) Summary judgment is proper "if all the papers submitted show that there is

6

no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action." (*Id.*, subd. (o); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849; *Serri v. Santa Clara University* (2014) 226 Cal. App.4th 830, 859.) "We liberally construe the evidence in support of the plaintiff opposing summary judgment and resolve doubts concerning the evidence in his favor." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7.) We exercise our independent judgment, without regard for the trial court's reasoning, "as to the legal effect of the undisputed facts [citation] and must affirm on any ground supported by the record." (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

We note that our review is limited to the issues which the parties have presented and briefed. "[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)[7]

---

[7] Vicente's opening brief contains no argument on the causes of action for reasonable accommodation and retaliation. At oral argument, counsel confirmed that Vicente did not contest the trial court's grant of summary judgment on the reasonable accommodation and retaliation claims. We affirm the trial court's judgment as to those counts.

**A. Vicente's Admission That He Was Not Able to Work With or Without Reasonable Accommodation Is Fatal to His Disability Discrimination Claim**

FEHA provides, in relevant part, that it is unlawful for an employer, because of physical disability or mental disability, "to discriminate against a person in compensation or in terms, conditions or privileges of employment." (Gov. Code, § 12940, subd. (a).) Subdivision (a)(1) of section 12940 makes clear that FEHA does not prohibit an employer from refusing to hire, or discharging an employee with a physical or mental disability; nor does FEHA subject an employer to any legal liability resulting from refusing to employ or discharging an employee with a physical or mental disability, if the employee, because of a physical or mental disability, "is unable to perform the employee's essential duties even with reasonable accommodations or cannot perform those duties in a manner that would not endanger the employee's health or safety or the health or safety of others even with reasonable accommodations."

Claims under the FEHA that an employer discriminated on the basis of disability require that the plaintiff have been able, with or without accommodation, to perform the essential functions of the job. (*Green v. State of California* (2007) 42 Cal.4th 254, 267 [discrimination]; *Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 980–981 (*Nadaf-Rahrov*) [failure to accommodate]). Vicente does not dispute that he was "completely unable to perform his work duties with or without reasonable accommodation between April of 2014 and September 10, 2017." Thus the trial court correctly ruled that Vicente failed to create a triable issue of material fact on the disability discrimination claim.

On appeal, Vicente asserts that material issues of disputed fact exist, cites authority about aspects of a disability discrimination claim that are not

relevant here, and fails to address the point that he cannot state a claim for disability discrimination under FEHA if he is unable to work with reasonable accommodation.[8] Vicente fails to address the dispositive effect this undisputed fact has on his claim, and at this point he has forfeited the issue. A person who is unable to work with or without accommodation may not state a claim for discrimination based on a disability because an employer is not required to employ someone who is completely unable to work. (*Green v. State of California*, *supra*, 42 Cal.4th at p. 262; *Nadaf-Rahrov*, *supra*, 166 Cal.App.4th at pp. 980–981.) We affirm summary judgment on the disability discrimination claim.

### B. Vicente's Admission That He Was Not Able to Work With or Without Reasonable Accommodation Also Forecloses His Interactive Process Claim

An employer must "engage in a timely, good faith, interactive process with [an] employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known . . . disability or known medical condition." (Gov. Code, § 12940, subd. (n).) "The interactive process imposes burdens on both the employer and employee. . . . 'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.' " (*Scotch v. Art Institute of*

---

[8] Vicente contends only that he "identified statements made during the arbitration hearing [as a result of which] Gardunio and [Deputy City Attorney] Gibson . . . knew of [his] diagnoses of PTSD and panic disorder," and that "[n]ot long after obtaining this knowledge, [the City] refused to engage with [him] and permit him to return to work." This evidence does not create an issue of material fact given Vicente's admission that he was unable to work *with or without accommodation*.

*California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).) However, "no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation.' " (*Ibid.*)

Vicente contends that he triggered a duty for the City to engage in interactive process during a July 2016 phone conversation with Gardunio, because his oral request for a fitness for duty examination was "precisely the type of information which triggers the duty to commence and engage in the interactive process."[9]

Even if we assume that Vicente triggered a duty for the City to engage in an interactive process, we affirm the judgment as to this claim based on the undisputed fact mentioned above, that "Plaintiff was completely unable to perform his work duties with or without accommodation between April of 2014 and September 10, 2017."[10]

The majority view is that an employee can prevail on an interactive process claim only if they identify a reasonable accommodation that could have

---

[9] The trial court held that Vicente had failed to identify a triable dispute material to the interactive process claim because "[h]is only argument is that '[the City] refused to communicate with ]his] counsel,' " coupled with assertions in his response to the separate statement that its agents "continued to violate [his] counsel's request that all communications regarding the arbitration award be through counsel." The court rejected that claim by noting that the record "is replete with evidence showing that [the City] was in regular contact with plaintiff's counsel." We recognize that Vicente's point was not that the City failed to communicate with his counsel at all, but rather, that the City failed to honor his request to communicate *exclusively* with his counsel about the arbitration award, instead communicating directly with Vicente on that topic. In any case, Vicente submits no argument as to how the City's alleged disregard of his lawyer's request to communicate solely with him about the award is material to his interactive process claim.

[10]Vicente's contention at oral argument that there was an "eight month window" where the City should have engaged in an interactive process fails in view of the time period covered by this undisputed fact.

enabled them to perform the essential functions of their job. (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 379; *Nadaf-Rahrov, supra,* 166 Cal.App.4th at pp. 980–981.[11]) The undisputed fact that Vicente's disability prevented him from working, with or without accommodations, from April 2014 until his return to work in September 2017 forecloses his interactive process claim. The City has raised this ground both below and on appeal, and Vicente has not addressed it in either court. His silence forfeits any argument that the interactive process claim can succeed given the undisputed fact that he was unable to work, with or without a reasonable accommodation, throughout the relevant period.[12] (*Cahill, supra,*

---

[11] We assume without deciding that the majority rule is correct. Our research reveals one older opinion holding that a lack of available accommodations is not fatal to an interactive process claim (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413 (*Wysinger*).) Whatever validity *Wysinger* may retain, its reasoning is inapplicable here, for *Wysinger* addresses a case in which an employer's failure to engage in the interactive process prevented the employee from discovering whether any reasonable accommodation existed. (*Id.* at pp. 424–425.) Here, Vicente himself made repeated, unprompted declarations that he could not work in the period at issue with or without reasonable accommodation; the lack of available accommodation is thus a fact declared by him, not a matter obscured by the City. And in any event, by failing to address this issue at all, Vicente has forfeited any argument that we should adopt the minority view that an interactive process claimant need not show that some accommodation was available.

[12] The record reveals one arguably available accommodation—a leave of absence. A finite leave to allow an employee to recover from a disabling condition and regain the ability to work can qualify as a reasonable accommodation under FEHA. (*Lopez v. La Casa De Las Madres* (2023) 89 Cal.App.5th 365, 384; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226.)

Not only has Vicente refrained from asserting that leave could constitute a reasonable accommodation, but at the summary judgment hearing, Vicente's

11

194 Cal.App.4th at 956.) We therefore affirm the judgment on the interactive process claim.

### C. Vicente's Purported Disputes as to the City's Undisputed Material Facts Do Not Create Material Disputes of Fact Preclusive of Summary Judgment

Vicente contends that the court erred in granting summary judgment because he "disputed no less than 23 of the [City's] 44 separately stated [undisputed material facts]." He paraphrases *Nazir v. United Airlines* (2009) 178 Cal.App.4th 243 (*Nazir*), for the proposition that "if even one of the allegedly material facts [set forth in the separate statement] is successfully disputed, the motion must be denied." In *Nazir*, the court criticized a moving party for propounding numerous facts in a separate statement, then adding a disclaimer, "Not all facts listed herein are necessarily material," about its own factual representations. (*Id.* at p. 252.) The court in *Nazir* observed that such a disclaimer "ignores the advice from the leading practice treatise: '**PRACTICE POINTER:** [¶] . . . [¶] Include only those facts which are *truly material* to the claims or defenses involved because the separate statement effectively *concedes* the materiality of whatever facts are included. Thus, if a triable issue is raised as to any of the facts in your separate statement, the motion must be denied!' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 10:95.1, pp. 10–35.)" (*Ibid.*)

---

lawyer unequivocally rejected the idea, arguing "the City, rather than engage in the interactive process, just decided to put Mr. Vicente on administrative leave, and . . . claim that that was an accommodation. *That's not an accommodation*" (italics added). Vicente thus waived any contention that a leave was an available accommodation, the existence of which might have enabled him to prevail on an interactive process claim under the majority rule noted above.

The principle noted in *Nazir* enables a court to treat a party's inclusion of a fact in its separate statement as a concession of the fact's materiality. (See *Insalaco v. Hope Lutheran Church of West Contra Costa County* (2020) 49 Cal.App.5th 506, 521–522 (*Insalaco)*, quoting *Nazir*, *supra*, 178 Cal.App.4th at p. 252.) The courts in *Nazir* and *Insalaco* addressed situations where defendants, faced on appeal with genuine disputes as to facts set forth in their separate statements, defended orders granting summary judgment by discounting their originally propounded facts as immaterial. (*Insalaco*, *supra*, 49 Cal.App.5th at p. 521 [defendant's rejoinder that their own propounded facts were not material was insufficient to uphold summary judgment, as defendant could not "have it both ways"]).

It does not follow, however, that a reviewing court must accept a factual dispute as preclusive of summary judgment merely because the fact is included in the moving party's separate statement. Even the court in *Nazir* observed, "[W]e exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims." (*Nazir*, *supra*, 178 Cal.App.4th at p. 253, citing *Romano v. Rockwell Internat., Inc.*, (1996) 14 Cal.4th 479, 457.) A court is not bound to accept a party's concession of a point of law, such as the materiality of a fact. (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729.)

This court retains the power to determine that, although a fact set forth in the separate statement is disputed, the dispute may not bar summary judgment if the fact is not truly material — or because the fact is material, but not to the theory upon which summary judgment is proper. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773 (*Pereda*) ["The fact that plaintiff disputes the vast majority of facts [in the separate statement] does not mean that any of those facts is material to the issue upon which

13

summary judgment was ultimately granted"].) In short, Vicente's assertions do not create material disputes of fact merely because he wrote "DISPUTED" in his responses to the separate statement.

Having reviewed Vicente's response to the separate statement, we conclude that while he identified several stated facts that are in some part disputed, he did not identify a genuine dispute as to any fact material to the City's entitlement to judgment.

Twenty of Vicente's 24 purported disputes of fact did not challenge the correctness of the fact at all. Six of Vicente's purported disputes were nonresponsive criticisms of the conduct at issue in a stated fact, not disputes of the fact's veracity.[13] Eight others disputed not the veracity of the stated fact but its legal significance, by reciting *other* facts that did not conflict *factually* with the stated fact, disputing how to frame the fact, or emphasizing other aspects of the event at issue.[14] Such argumentative responses belong in a party's opposition memorandum, not in a response to a separate statement. Six more purported disputes raised unsound evidentiary objections.[15]

---

[13] For example, in response to the statement, "On July 19, 2016, Rachel Gardunio contacted [Vicente] via telephone in an attempt to coordinate his return and to let him know he could start work at any time," Vicente wrote, "DISPUTED. Gardunio violated [Vicente's] counsel's request that compliance with the Arbitration Award be through counsel only."

[14] For example, in response to the statement, "During the July 19, 2016, call, . . . Vicente did not disclose to Rachel Gardunio any of his symptoms, state his diagnoses from his medical provider, or state that he was disabled," Vicente stated, "DISPUTED. [Vicente] testified that his PTSD and panic disorder diagnoses were brought up during arbitration, which Gardunio attended."

[15] Vicente disputed facts about the City's policies or knowledge of his condition as lacking foundation, speculative, and "self-serving"; he disputed facts reciting the arbitrator's findings as "hearsay statement[s] by the

14

That leaves only four responses challenging the *veracity* of the stated facts. One is unsupported by the record,[16] while another raised a genuine but trivial dispute about a factual detail that is immaterial to any theory on which the judgment was granted or is now upheld.[17]

The third dispute concerned the stated fact that "The City did not learn that [Vicente] was completely unable to work until January 9, 2017, when

Arbitrator cit[ing] to no evidence"; and he disputed a statement that he "was reinstated to the status of leave of absence as of February 13, 2017" by stating, "[t]he cited Exhibits do not support the alleged fact." But "self-serving" is not an evidentiary objection, the objection does not contradict the correctness of the fact alleged, and the declaration of Gardunio, the PUC's Acting Chief People Officer, describes the policies of the PUC based on her personal knowledge (rather than by speculation). The hearsay objection to the arbitrator's findings is inapt because the separate statement describes the findings not to establish the truth of the facts found but to show the existence of the findings, for purposes of the City's issue preclusion argument.

[16] In response to the fact, "Between July 19, 2016, and February 13, 2017, neither [Vicente] nor his counsel contacted the City to coordinate his in person return to work," Vicente wrote, "DISPUTED. [On] August 29 and September 8 letters were sent to Gardunio and Gibson." But Vicente did not submit copies of or quote the letters. We note that the City's moving papers had in fact included copies of the August 29 and September 8 letters from Vicente's counsel. Each letter asked only that Gardunio or Gibson "advise as to the status of Mr. Vicente's medical benefits and pay as soon as possible." Neither letter concerned an attempt "to coordinate his in-person return to work."

[17] In response to the stated fact, "The Arbitrator agreed that the evidence *demonstrated* that Vicente was 'in places he should not have been during the workday' and some discipline was appropriate" (italics added), Vicente wrote, "PARTIALLY DISPUTED. The citation is 'the evidence suggests' not that the evidence 'demonstrated.' " He is right, but the fact relates to one of the City's alternate theories for summary judgment, namely that the resolution of issues in the arbitration collaterally or equitably estopped Vicente to relitigate those issues in this lawsuit. In view of our affirmance of summary judgment on other grounds, we do not reach that issue.

[his] counsel first sent the City a copy of the psychiatrist's letter." Vicente responded, "DISPUTED. [Vicente] testified that his PTSD and panic disorder diagnoses were brought up during arbitration, which Gardunio attended."[18] While this suggests a dispute as to when the City learned of Vicente's disability in general, we note that he failed to cite evidence creating a genuine dispute as to the stated fact that it was in January 2017 that the City first learned that he was "completely unable to work." In any event, the only issue to which a factual dispute about when the City learned of Vicente's disability could be material is the issue of whether and when Vicente triggered the City's duty to engage in an interactive process. The legal theory under which we uphold summary judgment for that claim does not depend on whether or when a duty was triggered, but only on the undisputed fact that no accommodation was available at any relevant time. Thus, any dispute as to when the City learned of Vicente's disability is immaterial.

The final dispute arises from Vicente's claim that there is no evidence for the stated fact that "The City granted [Vicente] leave *as an accommodation* on an interim basis on February 10, 2017" (italics added). Vicente is correct that the letter cited by the City dated February 10, 2017 does not support the italicized part of that assertion. However, even

---

[18] Vicente cited only a passage in his deposition in which, when asked if he told Gardunio during the July 12, 2016 call "what your diagnoses from Dr. Auza were," he answered, "No, I did not. They basically knew," and when asked what he meant by that, he added, "Well, if I remember right, I remember it being brought up at the arbitrations." He did not recall which arbitration. He did not provide a transcript of the relevant arbitration hearing or any other evidence indicating how the topic was "brought up" or what was said.

assuming this dispute qualifies as genuine,[19] the City prevails on the reasonable accommodation claim because Vicente omitted any argument on the reasonable accommodation claim in his appeal, and he admitted he was not able to work with or without reasonable accommodation. The disputed fact is not material to the theories on which we affirm summary judgment.

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.


HIRAMOTO, J[*]


WE CONCUR:

BROWN, P. J.
STREETER, J.

*Vicente v. City and County of San Francisco* (A166480)

---

[19] Any dispute, we note, arises only from an apparent scrivener's error by the City's counsel, who should have cited exhibit 14 to Gardunio's declaration (a letter dated February 13, 2017, that refers repeatedly to the leave as "an accommodation") but instead cited exhibit 13 (a letter dated February 10, 2017, that does not use the term "accommodation").

[*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17